HENRY BRACHMAN *v.* ERASTUS M. SMITH, Adm'r of Albert R. Wise.

B. holding under deed from C., "*beginning sixty-six feet west of Vine street*," giving thirty-three feet front, conveyed by same description to W., who again, by same description, leased back to B. The deeds of the premises previous to C.'s deed to B. erroneously described it, "*beginning sixty-five feet west of Vine street*," giving thirty-four feet front, and on this line the division wall stood. The adjacent owner tore down this wall, and B. sued W. on the covenants of his lease.

Brachman *v.* Smith, Adm'r.

*Held,* that the language of the deeds from C. to B. and B. to W., and the manifest intention of the parties, overcame the presumption arising from the existence of the boundary wall, and that B. was estopped to claim the right of quiet possession to more than thirty-three feet.

ERROR TO SPECIAL TERM.—This was an action upon the covenants in a lease alleged to have been made by Albert R. Wise, in his lifetime, by which he demised to the plaintiff certain premises on Third street, Cincinnati, for the term of five years, at an annual rental of $1,500. A copy of the lease is made a part of the petition, wherein the property leased is described as part of lot 180 as numbered on the plan of Cincinnati, beginning at a point on the south side of Third Street, sixty-six feet east of Vine street, extending thence eastwardly on Third street thirty-three feet, thence southwardly at right angles with Third street ninety-nine feet, thence westwardly on a line parallel with Third street thirty-three feet, thence northwardly to Third street, the place of beginning, being the same premises conveyed to the lessor by the said Brachman."

The petition alleged that the plaintiff was in the possession of the premises under his lease, in which his lessor had covenanted that he should peaceably and quietly hold and enjoy during his term, without any hinderance on the part of the lessor and those claiming under him. Nevertheless, on the first day of July, 1864, one Joseph Trounstine, with others unknown, lawfully claiming under the intestate, and with his authority, but against the will of the plaintiff, entered the demised premises and evicted him therefrom, tore down one wall of the building erected thereon, and destroyed the fixtures, furniture, and improvements of the plaintiff therein, whereby the plaintiff was deprived of the possession of the premises, and compelled to expend large sums of money in protecting his merchandise and other chattels with which he carried on his business therein.

The adminitsrator of Wise answers denying all liability on the part of his intestate, for any act alleged to have been done by him or any person in his behalf, or by his consent, as is charged in the plaintiff's petition, claiming also that the lease made to the plaintiff was of the same premises described in identical language by metes and bounds, which the plaintiff used in the conveyance to the intestate on the same day the lease was executed; that at the time it was understood between the parties that Joseph Trounstine, who owned the property immediately west of the leased premises, and whose east line was the real west line of the leased premises, was about to erect a very large building, the east wall of which would take one foot of the ground where the west wall of the leased premises then stood, and certain stipulations in the lease were accordingly inserted manifesting the intention of the parties, as well as their mutual knowledge of the facts. These stipulations were: first, that the lessee should only hold the premises to the same extent as the lessor could claim if he had continued the occupier; second, that the lessee was to pay for all necessary repairs during the term, both parties being aware that these repairs would include whatever expenditure would be required to protect the lessee in the event the improvements contemplated by Trounstine should be made.

The answer further stated that if Trounstine did erect the new wall, taking down the west wall of the premises, he had the legal right to do so, as the old wall stood entirely upon the land owned by him, which the plaintiff well knew at the time he conveyed the property to the intestate and received in return the lease upon which this action is brought. That the work done in constructing the same was carefully and properly executed, and no more injury was done, if any was actually sustained, than the plaintiff must have anticipated when he received his lease; that Trounstine's east wall is now the permanent west wall of the leased premises; and that the lessee has had,

and still continues to have, the possession and enjoyment of thirty-three feet of ground, as called for in the plaintiff's deed and intestate's lease.

A general denial of the whole answer was set up by way of replication.

The trial at the Special Term was had by a jury, and a verdict returned for the defendant.

To the refusal of the Court to grant a new trial, the plaintiff excepted and the cause taken to General Term on error.

*George E. Pugh* and *Gazley*, for plaintiff.

*George Hoadly* and *Challen*, for defendant.

Storer, J.    The errors alleged are predicated upon the improper admission of testimony, and the exclusion of legal evidence, as well as the refusal to grant a new trial, on the ground that the verdict was against the law and the evidence adduced on the trial.

The exceptions taken to the evidence offered and allowed to be read on the trial have not been pressed in argument, and we need not now consider them, for we are satisfied that the rights of the parties can be determined upon that portion of the testimony which we find fully stated in the bill of exceptions, and to which no objection seems to have been made.

A brief history of the title to the premises is this: On the eleventh day of July, 1859, Brachman became the owner, by deed from Coolidge, which described the boundary as beginning and ending exactly as we find it stated in the conveyance from Brachman to Wise and the lease from Wise to Brachman. But it was then known that there had been a mistake in describing the boundary of the premises in the deeds of some of the proprietors prior to Brachman's purchase, the true line beginning sixty-six feet from Vine street, though stated to be but sixty-five.

Thus Coolidge, who obtained his title from one Ogden, in 1858, under an agreement to purchase made in 1838, took possession of the premises with the understanding that his western line was only sixty-five feet from Vine street, and built his west wall accordingly. Thus the fact must have been well known to Brachman at the time of his purchase from Coolidge, for it was then evident, by the description in his deed, that measuring sixty-six feet from Vine street, instead of sixty-five feet, must include the west wall of the building as it then stood. Indeed, the subsequent conveyance by Brachman to Wise must, we think, beyond doubt establish the clear understanding of the parties as to the extent of his purchase. In 1864, after Brachman had been Wise's tenant for nearly a year, Trounstine, who had already contemplated the improvement of his ground between Wise's west line and Vine street, having previously made an agreement for that purpose with Wise, took down a portion of the west wall of the premises in dispute and placed the foundation of his own east wall on what was claimed to be the true line between the parties, erecting thereon a large and valuable building. This work necessarily exposed the plaintiff's premises, and interfered with his business during the time that was required to make the improvements of which Brachman subsequently enjoyed the benefit. It is, then, for the damages sustained by taking down the old wall and the construction of the new that this action is brought.

At the time Trounstine made the alteration, Wise was absent from the State, and so remained several months, and if we connect this fact with the allegation in the petition, that the wall was taken down by Trounstine, we hold it to be very doubtful whether any case is made against Wise. How far the averment that Trounstine "lawfully claiming under Wise and with his authority," is sufficient to create a liability for a test, is at least very questionable. We need not now determine the question, as we are sat-

isfied, on the whole case, the plaintiff has no right of action against the defendant's intestate.

When the plaintiff obtained his title from Coolidge, he could not have been ignorant of the true boundary line of the adjacent premises on the west. The wall then standing was evidently erected on the supposition that the premises on which it was built were to be measured sixty-five feet from Vine street, and he could not, therefore, claim anything by his occupancy, on account of an erroneous boundary. It was alike obligatory on all parties, if the fact were known, to regard it in the light of a mistake rather than as an estoppel upon both. Nor would the statute of limitations give any additional privileges, since as long before the bar, if it could be claimed it ever existed, the boundary was deemed to be the true one, and nothing could have been gained by mere acquiescence.

We admit the rule that known and established monuments control the quantity of the estate granted, if they have existed for the term prescribed by the statute, and in the meanwhile have been always regarded as defining a division line; but when the boundary is questioned by such unequivocal acts as we find in the record, the proposition made by the plaintiff can not be sustained.

A disputed line may be settled by the mutual consent of the adjacent proprietors, if such consent is clearly proved, and has long been acted upon. But there must be no misapprehension on the part of those who determine the boundary as to the state of fact which then exists. Both must be informed of the true character of the matter in dispute, and when thus advised, connected with subsequent occupation by the agreed line, the controversy must end. The parties have then settled all matters in dispute. Where, however, a vendee fixes a boundary line which coincides with the description in his deed, and afterward finds the description to be erroneous, his subsequent re-conveyance of the premises to his gran-

tor under the true description establishes the fact of an erroneous boundary, which the original grantor or his grantee will not be permitted to dispute.

In the case before us, Coolidge conveyed the premises to Brachman by its true description, and Brachman with the same description granted to Wise. He following the description used in his deed, leased back the premises to Brachman, which, we think, clearly shows that none of the grantors supposed they had any right beyond what had been already distinctly defined. They must be estopped to deny what they have so solemnly admitted. Any other determination on our part would give to the plaintiff thirty-four feet of ground, when he claimed no more than thirty-three feet by his deed from Coolidge and his conveyance to Wise.

On the assumption that Trounstine was the real owner of the ground upon which he erected his east wall, he had the undoubted right to take possession of it and appropriate it to his individual advantage. The plaintiff can not claim adversely to his own acts, and if there is evidence to authorize us to hold that the wall was taken down in a careful, skillful manner, and no injury was caused other than what would have been the necessary result of erecting the new wall, we must apply the rule which governs when owners of party walls find it proper for either to take down the common structure in order to rebuild it. *Hieatt* v. *Morris,* 10 Ohio St. 523.

All the facts submitted to the jury have been passed upon by them, and their finding upon the evidence is, in our opinion, consistent with the law of the case. And neither in the rulings of the court on the questions submitted at the trial, in the charge to the jury, or in the exclusion or admission of testimony, do we find any error.

Judgment affirmed.